**UNITED STATES BANKRUPTCY COURT**

DISTRICT OF SOUTH DAKOTA

ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
PIERRE, SOUTH DAKOTA  57501-2463

IRVIN N. HOYT                                                      TELEPHONE (605) 945-4490
BANKRUPTCY JUDGE                                                        FAX (605) 945-4491

April 30, 2007

John H. Mairose, Esq.
Counsel for Plaintiff-Debtor
2640 Jackson Boulevard, Suite 3
Rapid City, South Dakota  57702

Jamie L. Damon, Esq.
Counsel for Defendant
Post Office Box 1115
Pierre, South Dakota  57501

>    Subject:  *Paul W. Mitchell v. Monica Iverson (In re Mitchell)*, Adversary No. 06-5002; Chapter 7, Bankr. No. 05-50528

Dear Counsel:

   The matter before the Court is the Motion for Summary Judgment filed by Plaintiff Paul W. Mitchell and the response thereto filed by Defendant Monica Iverson.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, summary judgment shall be entered for Plaintiff-Debtor.

   SUMMARY.  Paul W. Mitchell ("Debtor") filed a Chapter 7 petition in bankruptcy on August 30, 2005.  He did not schedule any claim against him held by Monica Iverson ("Iverson"), and he did not list her on his mailing list of creditors.  Iverson did not receive formal notice of the bankruptcy case from the Bankruptcy Clerk before Debtor's discharge order was entered December 6, 2005.  On December 15, 2005, Debtor amended his schedules to add Iverson as a creditor, the Bankruptcy Clerk served Iverson with a late notice of commencement of the case, and the Bankruptcy Clerk added Iverson to the mailing list of creditors.

   On January 5, 2006, Debtor, relying on 11 U.S.C. § 523(a)(3), filed a complaint against Iverson seeking a declaration from the Court that Iverson's claim against him was discharged although Iverson had not received notice of the case before the discharge was entered.  In her amended answer, Iverson said her claim against Debtor arose under 11 U.S.C. § 523(a)(2), (4), or (6) and so could

not be declared dischargeable under § 523(a)(3). Iverson also counterclaimed on the same grounds and stated she held a nondischargeable default judgment for $40,400.00, including costs, arising from a fraud and breach of contract action she brought against Debtor in state court. In his reply to the counterclaim, Debtor stated "no allegation of fraud or securities promotion was made in [Iverson]'s State Court pleadings," and he argued the state court action was based on breach of contract only. Debtor further argued Iverson could not assert a different and inconsistent position in this dischargeability litigation.

In answers to interrogatories posed by Iverson, Debtor said he or a legal entity in which he held an interest, Equity Title Loan, L.L.C., borrowed $20,000.00 from Iverson at a high interest rate. He also said Iverson had been paid $2,000.00 in interest. Debtor said the funds were used by the L.L.C. for lending capital and to pay expenses. Debtor claimed no stock transactions were involved, contrary to Iverson's assertions in her amended answer. Debtor also stated he was never licensed or registered to sell securities in any state. Debtor's interrogatory answers also indicated Debtor and Iverson had a personal relationship before and during the time of the transaction.

On June 18, 2006, Debtor moved for summary judgment. He argued Iverson had failed to make factual assertions sufficient to support a nondischargeable claim under § 523(a)(2), (4), or (6). He also argued the state court default judgment was insufficient to establish fraud-based nondischargeability under any of these subsections. Debtor, in his brief in support of his motion, further argued Iverson's state court default judgment was void since it had been entered after his bankruptcy was commenced and after Iverson received notice of the bankruptcy case via his response to her request for the state court default judgment. Finally, Debtor argued in his brief Iverson was estopped from asserting her claim against him was fraud-based in this action when she had declared it was a breach of contract action before the state court.

In her responsive brief to Debtor's summary judgment motion, Iverson argued the state court action, in which she alleged only breach of contract, does not estop her from alleging fraud in this nondischargeability action. Citing cases from the South Dakota Supreme Court and the United States Supreme Court regarding judicial estoppel, Iverson argued she would not be given an unfair advantage and there is no unfair detriment to Debtor if she now

Mitchell v. Iverson
April 30, 2007
Page 3

alleges fraud.  Iverson also argued, without citation of authority, she had no control over the cause of action her state court attorney brought.

In support of her response to Debtor's summary judgment motion, Iverson also filed an affidavit.  Therein, she acknowledged she loaned Debtor $10,000 in April 2002 and another $10,000 in August 2002. She stated Debtor

> took advantage of me when I told him I had lost my job in April 2002, and was having a hard time finding other employment.  I had told [Debtor] that I was afraid I may lose my home.  [Debtor] suggested to me that if I had any money to invest in his business, he could pay me a very good interest rate[.]

Iverson also stated she eventually signed a contract backdated to September 1, 2002.  Iverson said she grew frustrated when she did not receive the principal back as promised, she corresponded several times with Debtor seeking her money, and he responded with statements she could trust him.  Eventually, Iverson said she obtained counsel and commenced the state court breach of contract action, with the attorney selecting the nature of the lawsuit.

Debtor timely filed a reply brief.  He emphasized the record showed Iverson had only a debt arising from a breach of contract and she "has made no allegation of any untrue representations having been made at the time of the loan."  Therefore, Debtor argued Iverson could not meet her burden of establishing nondischargeability under § 523(a)(2)(A), (a)(4), or (a)(6) and he was entitled to judgment as a matter of law.

DISCUSSION.  *Summary judgment*.  The parties do not dispute the applicable law governing summary judgment.  Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).  An issue of material fact is *genuine* if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein).  A genuine issue of fact is *material* if it might affect the outcome of the case.  *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion.  *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490

(8th Cir. 1992) (quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out the part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997)(quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346. If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995).

*Exception from discharge under § 523(a)(3)*. Section 523(a)(3) is one of the more complicated Bankruptcy Code sections. In essence, it provides exceptions to an exception to a debtor's discharge. If an unscheduled creditor holding a general claim receives notice of the case in time to file a proof of claim, the claim is dischargeable. 11 U.S.C. § 523(a)(3)(A). The unscheduled creditor is thus treated the same as other similarly situated, but scheduled, creditors. If the unscheduled creditor holds a fraud-based claim against the debtor, however, he must receive notice of the case in time to file a proof of claim *and* in time to commence a nondischargeability action under § 523(a)(2), (4), or (6). If he does, then the creditor's fraud-based claim is also dischargeable.

In this adversary proceeding, the only aspect of § 523(a)(3) in dispute is whether Iverson's claim would have been declared non dischargeable under § 523(a)(2), (4), or (6) had she been able to timely bring a complaint against Debtor under one or more of those subsections. Debtor has argued Iverson should be estopped from making any fraud allegations in this adversary proceeding where she did not do so in her earlier state court action against him.

*Judicial estoppel*. Under the doctrine of judicial estoppel, a party will be precluded from taking a legal position in one action that is clearly inconsistent with one taken earlier. *Canyon

Mitchell v. Iverson
April 30, 2007
Page 5

*Lake Park, L.L.C. v. Loftus Dental, P.C.*, 700 N.W.2d 729, 737-38 (S.D. 2005). The elements necessary for application of the doctrine are the later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped. *Id.* (quoting therein *Watertown Concrete Products, Inc. v. Foster*, 630 N.W.2d 108, 112-13 (S.D. 2001)(cites therein)). In other words, a party is bound by his successful judicial declarations in a legal action, and he may not contradict them in a subsequent proceeding simply because his interests have changed, especially if the change prejudices a party who acquiesced to the position first taken. *Watertown Concrete*, 630 N.W.2d at 112.

Upon the record presented here, the Court first concludes the positions taken by Iverson in state court and then before this Court are sufficiently inconsistent for estoppel to apply. The state court action was a straightforward breach of contract action. Fraud was not alleged. There was nothing in the state court complaint that even hinted at fraud by Debtor at the time the debt to Iverson was created. *See In re Eagle Enterprises, Inc.*, 259 B.R. 73, 80 (Bankr. E.D. Pa. 2001). Iverson's attempt now, however, to translate her state court breach of contract judgment into a nondischargeable judgment arising from fraud is too disparate. *Id.* Though fraud may certainly be ancillary to a breach of contract action, *see Deutz & Crow Co. v. South Dakota State Cement Plant Commission*, 466 N.W.2d 631 (S.D. 1991), Iverson did not bring any allegations of fraud before the state court.

There is no dispute the state court accepted Iverson's breach of contract allegations. A default judgment was entered on those grounds. Thus, the second element for application of judicial estoppel is present.

The third and final element necessary to apply the doctrine of judicial estoppel is also present. To allow Iverson to now plead fraud under § 523(a)(2),(4), or (6) in order to preserve her judgment from discharge under § 523(a)(3) would be prejudicial to Debtor. Iverson did not raise any fraud claims against Debtor in her state court action. Had she done so, Debtor may have offered a defense to those allegations. Instead, he apparently agreed he had breached his contract with Iverson. His only attempted defense

Mitchell v. Iverson
April 30, 2007
Page 6

was the imposition of the automatic stay in bankruptcy.[1]

The Court recognizes the state court judgment is void since it was entered in violation of the automatic stay. *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 320-25 (B.A.P. 8th Cir. 1999). That fact, however, does not derogate Iverson's success in bringing breach of contract allegations before the state court. The judgment's efficacy was only nullified by Debtor's bankruptcy. Accordingly, though Iverson's state court default judgment is void, that consequence of bankruptcy cannot be turned into a new opportunity for Iverson to preserve her claim from discharge on a different legal theory than she espoused before the state court.

Iverson also wants the Court to decline to apply judicial estoppel because she says she had no control over what her state court attorney plead. That theory is meritless. Iverson's state court attorney was her agent, and she is bound by the attorney's acts. *See Sayer v. Lee*, 166 N.W. 635, 636 (S.D. 1918)(client bound by acts of her attorney within scope of business entrusted to the attorney). There is no evidence Iverson's state court counsel did anything outside the scope of authority given by Iverson; rather, it appears the attorney sought and obtained the precise relief Iverson desired. Moreover, Iverson did not assail her state court counsel's actions until this adversary proceeding arose. *See Petersen v. Petersen*, 245 N.W.2d 285, 288 (S.D. 1976)(client may ratify his attorney's acts by failing to timely repudiate them).

Even if the Court were to decline to apply the doctrine of judicial estoppel and focus only on Iverson's fraud claims under § 523(a)(2), (4), or (6), the result would be the same. The record is devoid of any factual allegations by Iverson that, even if accepted as true, would result in her claim being nondischargeable under any of these subsections of § 523(a).

To recover under § 523(a)(2)(A) or (B), Iverson would have to show a false oral or written representation made by Debtor to Iverson resulted in the incurrence of the debt. *Spyke, Inc. v. Ronald H. Zufall, et al. (In re Zufall)*, Bankr. No. 05-50693, Adv.

---

[1] The present record is unclear on whether the state court received Debtor's response to Iverson's motion for default judgment before the default judgment was entered. Debtor's response was dated January 5, 2006, and the order for default judgment was dated January 6, 2006.

Mitchell v. Iverson
April 30, 2007
Page 7


No. 06-5005, slip op. (Bankr. D.S.D. Feb. 21, 2007)(discussion of elements of § 523(a)(2)(A));  *First Western Bank, Deadwood v. Delbert Brink, et al. (In re Brink)*, Bankr. No. 02-50529, Adv. No. 02-5014, slip op. (Bankr. D.S.D. Feb. 7, 2003)(elements of § 523(a)(2)(B)).  Here, however, Iverson's allegations of fraud relate only to Debtor's acts and statements *after* the debt was incurred.  *Cheryl Reed v. Lloyd C. Johnson (In re Johnson)*, Bankr. No. 05-30023, Adv. No. 05-3004, slip op. 9-10 (Bankr. D.S.D. May 30, 2006)(promise to pay is not a false representation of a present or past fact)(citing *Gadtke v. Bren (In re Bren)*, 284 B.R. 681, 690 (Bankr. D. Minn. 2002)).

To recover under § 523(a)(4), Iverson would have to establish Debtor was her fiduciary, *Estate of Robert Lacey v. Jeffrey L. Knopf (In re Knopf)*, Bankr. No. 01-40574, Adv. No. 01-4030, slip op. (Bankr. D.S.D. May 10, 2002), that Debtor unlawfully came into possession of her money, *Johnson*, slip op. at 12-13 (elements of larceny), or that he unlawfully used her money after it came into his possession.  *First Dakota National Bank, N.A. v. James J. Scoblic (In re Scoblic)*, Bankr. No. 04-40923, Adv. No. 04-4071, slip op. at 8-9 (Bankr. D.S.D. May 18, 2005))(elements of embezzlement).  Iverson has made no such allegations.

Finally, to recover under § 523(a)(6), Iverson would have to prove her claim against Debtor arose from his willful or malicious acts.  Again, her general allegations of fraud and the undisputed facts do not converge to allow relief under that subsection. Iverson made no allegations of deliberate acts by Debtor targeted to cause her financial harm.  *Johnson v. Logue (In re Logue)*, 294 B.R. 59, 62-63 (B.A.P. 8th Cir. 2003)(cited in *Scoblic*, slip op. at 5-7).  Therefore, even if judicial estoppel did not preclude Iverson's general allegations of fraud in this adversary proceeding, summary judgment for Debtor would nonetheless be warranted since the record is devoid of allegations and proffered evidence sufficient to provide Iverson relief under § 523(a)(2), (4), or (6).

For the reasons set forth herein, summary judgment will be entered for Debtor.  Iverson's pre-petition claim against Debtor will not be excepted from discharge even though her claim was not timely scheduled.  To the extent Iverson's claim is not paid by the

Mitchell v. Iverson
April 30, 2007
Page 8

bankruptcy estate, it is dischargeable.[2]

    Finally, Iverson's counterclaim will be dismissed. It did nothing more than raise the same issues she raised in her answer; it did not establish any independent basis for relief against Debtor.

    An appropriate order and judgment will be entered.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

CC:  case file (docket original; serve parties in interest)

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

   [2] The Court encourages Iverson to promptly file a proof of claim in Debtor's main case and participate in whatever distribution to creditors the case trustee is able to make.